UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JUSTIN P. WELCH,

                    Plaintiff,

v.

                      Case No. 15-CV-191-JPS

KYLE K. TRITT, MARK J. JENSEN,
JASON J. GRAHL, and
BLAKE R. STRAHOTA,

                    ORDER

                  Defendants.

1.     INTRODUCTION

On February 22, 2016, the defendants filed a joint motion for summary judgment, as well as proposed findings of fact, a brief in support of the motion, and several declarations. (Motion, Docket #61; Proposed Findings of Fact, Docket #69; Brief in Support, Docket #68; Declarations of Mark Jensen, Kyle Tritt, Blake Strahota, Welcome Rose, Jeffery Manlove, and Jason Grahl, Docket #62, #63, #64, #65, #66, and #67, respectively). On April 19, 2016, the plaintiff, Justin P. Welch ("Welch"), filed a brief in opposition to the motion, a response to the proposed findings of fact, and two declarations. (Brief in Opposition, Docket #74; Response to Proposed Findings of Fact, Docket #75; Declarations of Justin P. Welch and Jeffery E. Olson, Docket #76 and #77, respectively). He did not submit a separate statement of additional facts. On May 3, 2016, the defendants filed a reply in support of their motion and a reply to Welch's response to their proposed findings of fact. (Reply in Support, Docket #79; Reply to Response to Proposed Findings of Fact ("RRPFF"), Docket #82). The motion is fully briefed and, for the reasons explained below, it will be granted.

2.    STANDARD OF REVIEW

Federal Rule of Civil Procedure ("FRCP") 56 provides the mechanism for seeking summary judgment. FRCP 56 states that the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Boss v. Castro*, 816 F.3d 910, 916 (7th Cir. 2016). A "genuine" dispute of material fact is created when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court construes all facts and reasonable inferences in a light most favorable to the non-movant. *Bridge v. New Holland Logansport, Inc.*, 815 F.3d 356, 360 (7th Cir. 2016).

3.    FACTS

    3.1    Olson Declaration

Preliminarily, the Court must address the defendants' motion to strike the purported expert testimony of Jeffery E. Olson ("Olson"). (Docket #80). In response to the defendants' motion for summary judgment, Welch relies on testimony from his fellow inmate and apparent jailhouse lawyer, Olson, to dispute several facts. *See* RRSFF ¶¶ 36, 39, 43, 44, 47, 48. Olson claims to have an IQ of over 160, received medical training while serving as a hydraulic fluids mechanic with the U.S. Army, and has helped his three daughters study for nursing school using "text/schoolbooks." (Docket #77 at ¶¶ 1, 7). Olson provides testimony on the amount of blood that Welch allegedly lost during the incident, *id.* at ¶¶ 4-6, on when a certain amount of blood loss constitutes a "life-threatening condition" that requires hospitalization, *id.* at ¶¶ 8, 10, 13, and on the reliability of the "elevated legs"

blood pressure test to examine the effects of blood loss on the human body, *id.* at ¶¶ 9, 12, 13.

Admission of expert testimony "is governed by Federal Rule of Evidence 702 and the Supreme Court's opinion in *Daubert v. Merrell Dow Pharmaceuticals., Inc*[.]" *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009). Such testimony may only be admitted "when it is reliable and would assist the trier of fact to…determine a fact at issue in a case." *Id.* The party presenting the testimony "bears the burden of demonstrating that the expert's testimony would satisfy the *Daubert* standard." *Id.*

Under Federal Rule of Evidence ("FRE") 702, the Court first determines whether an individual qualifies as an expert "by knowledge, skill, experience, training, or education." Fed. R. Evid. 702; *see also* Fed. R. Evid. 104(a) ("The court must decide any preliminary question about whether a witness is qualified[.]"). In doing so, the Court considers the expert's "full range of practical experience as well as academic or technical training[.]" *United States v. Parra*, 402 F.3d 752, 758 (7th Cir. 2005). It must "compar[e] the area in which the witness has superior knowledge, skill, experience, or education with the subject matter of the witness's testimony." *Carroll v. Otis Elevator Co.*, 896 F.2d 210, 212 (7th Cir. 1990).

Welch fails to carry his burden to show that Olson is qualified to give medical opinions. Olson's only bases to establish the requisite training and experience are: 1) his IQ; 2) an unspecified amount of medical training he received in the Army; 3) experience estimating hydraulic fluid loss; and 4) reading medical textbooks. Olson does not claim to be a medical doctor or other medical professional, and thus does not qualify as a medical expert who can reliably educate the jury on the effects of blood loss on the human body. *See Jones v. Lincoln Elec. Co.*, 188 F.3d 709, 723-24 (7th Cir. 1999)

(concluding that only a medical doctor could testify as to the process in which the human body absorbs certain substances); *Wintz v. Northrop Corp.*, 110 F.3d 508, 513 (7th Cir. 1997) (concluding that only a medical doctor, not a toxicologist, could explain the effects of bromide on pregnant women). In fact, "simply because a doctor has a medical degree does not make him qualified to opine on all medical subjects." *Gayton v. McCoy*, 593 F.3d 610, 617 (7th Cir. 2010). Olson has not claimed possession of *any* formal medical degree, certification, or experience, and therefore his asserted "expertise" falls woefully short of the requirements of FRE 702. At best, Olson is an expert on hydraulic systems, but this case involves a human body.

Detecting this flaw, Welch claims that Olson actually offers lay opinion testimony which is subject to FRE 701. (Docket #83). FRE 701 limits lay opinion testimony to that which is: "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 702. Welch fails to show that any of these elements are present. First, none of Olson's testimony could be based on his own perception, as he was not present for any of the events at issue. Second, the only factual basis for his opinions is photographs of Welch's cell. The jury could just as readily view the photographs themselves. Finally, Olson's testimony is clearly based on his purported expertise, contrary to FRE 701's final element.

In sum, the Court concludes that Welch fails to meet the standards of either FRE 701 or 702 in proffering Olson's opinion testimony. Accordingly, the Court will grant the defendants' motion to strike Olson's declaration and will not consider his testimony for the purposes of deciding the summary judgment motion.

### 3.2 Relevant Facts

The Court will provide a sequence of events, as well as addressing other relevant factual topics, noting the parties' disagreement where appropriate. In accordance with the standard of review, the facts and inferences therefrom are construed in Welch's favor. Further, the Court must disregard Olson's testimony as noted above.

#### 3.2.1 The July 4, 2014 Incident

During the relevant period, Welch was incarcerated at Waupun Correctional Institution ("Waupun"). RRSFF ¶ 1.[1] Defendants Kyle K. Tritt ("Tritt"), Blake R. Strahota ("Strahota"), Jason J. Grahl ("Grahl"), and Mark J. Jensen ("Jensen") were employed by the Wisconsin Department of Corrections ("DOC"). RRSFF ¶¶ 3-6. Tritt was a Lieutenant, Strahota was a Correctional Officer, Grahl was a Correctional Sergeant, and Jensen was a Nurse Clinician. RRSFF ¶¶ 3-6.

On July 4, 2014, Officer Loison Kast ("Kast"), and defendants Strahota and Grahl were assigned to the segregation building. RRSFF ¶ 8. Around 6:45 p.m., while conducting routine rounds of his assigned post, Kast observed Welch leaning against the wall in his cell with blood on the floor. RRSFF ¶ 8. Kast called for a sergeant to report to Welch's cell; Strahota and Grahl responded. RRSFF ¶ 9-11, 13. Tritt was also called. RRSFF ¶ 12.

Upon arriving at the cell, Strahota observed "a lot of blood" on the floor and a self-inflicted wound on Welch's left arm near the elbow. RRSFF ¶ 14. Grahl ordered Welch to come to the front of the cell so that he could be

---

[1] Citations are made solely to the RRSFF for brevity's sake; the cite may refer to material in the asserted fact, the response, and/or any reply.

restrained. RRSFF ¶ 13. Welch complied, while Strahota applied pressure to Welch's wound to stop the bleeding. RRSFF ¶ 15.

Tritt and Officer Michael Britten ("Britten") arrived as Welch's cell door was being opened. RRSFF ¶¶ 16-17. Tritt observed blood on the cell floor and Strahota applying pressure to Welch's elbow. RRSFF ¶ 18. Britten wrapped a towel around Welch's arm and Strahota applied pressure on the towel. RRSFF ¶ 19. Tritt then told Britten to obtain a hand-held video camera to document the incident as was standard practice at Waupun for cell extractions involving self-inflicted wounds. RRSFF ¶¶ 20-21. The events were recorded from this time until Welch was returned to an observation cell. RRSFF ¶ 63.[2]

Welch then collapsed to the floor in his cell. RRSFF ¶ 22. The officers applied more restraints to Welch and continued to apply pressure to his wound. RRSFF ¶ 22. Tritt radioed another officer to prepare an armed escort in the event Welch would need to be transported out of the institution to a hospital. RRSFF ¶ 23. Welch was taken via wheelchair to the nurse station. RRSFF ¶ 24. Strahota applied pressure to the wound as Welch was wheeled to the nurse station. RRSFF ¶ 25. Strahota was present for a few minutes once Jensen arrived, but then returned to his post. RRSFF ¶¶ 26, 56. Grahl and Tritt remained present during Jensen's examination of Welch. RRSFF ¶¶ 55, 57.

### 3.2.2 Jensen's Assessment and Treatment

Jensen observed a self-inflicted laceration on the front of Welch's left elbow that appeared to be approximately 1.5 cm long. RRSFF ¶ 27. There was

---

[2]Welch's factual briefing repeatedly references portions of this video recording, but neither party provided it to the Court. Without the video, the Court must give no weight to the citations thereto. *See* FRCP 56(c)(1)(A).

no active bleeding at the time. RRSFF ¶ 28. Jensen cleaned and covered the wound, then examined Welch's vitals and mental status to determine how much blood he had lost. RRSFF ¶¶ 28-31. Welch's blood pressure while sitting was 96/68 with a pulse of 108, and with his legs elevated, it was 107/74 with a pulse of 76. RRSFF ¶ 32. Jensen examined Welch for approximately twenty-five minutes and they carried on at least a minimal level of conversation during that time. RRSFF ¶ 34. Welch claims that Jensen made "callous" and "sadistic" comments during the assessment.[3]

Jensen determined that Welch had acute blood loss, and he gave Welch a glass of water to drink to replenish lost fluid volume. RRSFF ¶¶ 33, 48. Jensen then advised Welch to increase his fluid intake and to notify the Health Services Unit ("HSU") if any problems arose. RRSFF ¶ 33. Welch questions whether he could have actually increased his fluid intake given the difficulty in obtaining drinking water in his observation unit. RRSFF ¶ 33. Jensen noted that HSU would follow up in four days. RRSFF ¶ 33.

The parties dispute what was said at the conclusion of the assessment. The defendants claim that Jensen stated that Welch did not need to go to the hospital. RRSFF ¶ 57. Welch agrees with this, but adds that Tritt and the other defendants present indicated that it would be inconvenient to transport Welch to the hospital. RRSFF ¶ 57. Welch believes that their statements influenced Jensen's decision on hospitalization. (Docket #74 at 4). Tritt called off the previously requested armed escort. RRSFF ¶ 57. Welch was strip searched and moved to an observation cell at the direction of Dr. Johnston, a clinical psychologist. RRSFF ¶¶ 59-62.

---

[3]This assertion was not included in a separate statement of fact but the Court will nevertheless consider it. *See* (Docket #76 at 2, ¶ 16).

### 3.2.3 Follow-Up Treatment

On July 8, 2014, a nurse spoke with Dr. Jeffery Manlove ("Manlove"), a physician at Waupun, indicating that Welch told her he was concerned about his blood loss. RRSFF ¶ 66-67. Manlove ordered a comprehensive blood test. RRSFF ¶¶ 68-72. Such a test should not be run immediately after a patient loses blood because the results may be skewed. RRSFF ¶ 73. The test was performed on July 10, 2014. RRSFF ¶ 75.

On July 14, 2014, Manlove reviewed the results. RRSFF ¶ 76. He determined that Welch should have a blood transfusion, although it was not necessarily required given the test results. RRSFF ¶¶ 76-78. Welch's blood transfusion consisted of packed red blood cells, not whole blood, and was thus not intended to replenish lost volume. RRSFF ¶¶ 54, 79-80. Manlove also ordered an iron supplement for Welch which, along with the transfusion, would help his body create more blood. RRSFF ¶¶ 79, 81. On July 17, 2014, Welch successfully underwent the transfusion. RRSFF ¶ 83. Welch's wound eventually healed well with no complications. RRSFF ¶ 41.

### 3.2.4 Opinions of Welch's Treatment

The parties agree that Tritt, Strahota, and Grahl are not medical professionals. RRSFF ¶¶ 7, 64. They are not trained to measure blood loss or otherwise determine when an inmate needs additional medical care. RRSFF ¶ 64. In fact, they lack authority to order hospitalization; only medical staff can make that decision. RRSFF ¶ 65.

Instead, Nurse Jensen was responsible for assessing an inmate's medical condition and applying treatment. RRSFF ¶ 35. Jensen did so using his personal observations, assessment of Welch's condition, and professional judgment. RRSFF ¶¶ 39, 50. In assessing Welch, Jensen was aware of his previous similar cutting incidents. RRSFF ¶ 42. However, that knowledge did

not bear on Jensen's assessment; he relied on the contemporaneously obtained objective evidence of Welch's condition. RRSFF ¶ 42.

It is difficult to accurately determine blood loss simply by looking at the blood spilled or witness statements. RRSFF ¶ 43. Thus, Jensen relied on vital signs, namely checking Welch's blood pressure, as a better form of measurement. RRSFF ¶ 44. Welch's low blood pressure and elevated pulse while sitting indicated a possible fluid deficit. RRSFF ¶ 46. When Jensen had Welch elevate his legs, his blood pressure and pulse returned to normal. RRSFF ¶ 47. This indicated that his body was compensating for the lost blood. RRSFF ¶ 47.

Welch claims that his lips were pale, he had cold, clammy skin, and dizziness. RRSFF ¶ 51. However, Jensen did not observe these symptoms and measured Welch's vital signs as normal. RRSFF ¶¶ 49, 51. Younger patients like Welch are usually better able to withstand acute blood loss, especially when they do not have other aggravating conditions. RRSFF ¶¶ 52-53. Because it did not appear that Welch was in danger of losing life or limb, Jensen concluded that the situation was not an emergency. RRSFF ¶¶ 36-37, 49.[4] Jensen did not consult with an advanced care provider before deciding to not send Welch to the hospital. RRSFF ¶ 38. In support of this, Jensen relies on his assessment of the situation as a non-emergency, while Welch counters that Tritt was resistant to hospitalization because it would be inconvenient. RRSFF ¶ 38. Jensen states that he did not base his opinion on Tritt's or anyone else's statements. RRSFF ¶ 40.

---

[4]Welch attempts to dispute Jensen's opinion, but his only support for this is Olson's excluded testimony. The facts must, therefore, be treated as undisputed.

Manlove opines that the fact that Welch underwent a blood transfusion does not indicate that he had an emergency on July 4, 2014. RRSFF ¶ 85. Manlove further states that immediate hospitalization or transfusion was not necessary on July 4, 2014, as Welch was not exhibiting signs of shock and had normal vital signs. RRSFF ¶¶ 86, 90. In sum, Manlove concludes that Jensen acted in accordance with the standard of care applicable to nurses and consistent with correctional policies. RRSFF ¶ 91. Welch believes that Manlove's opinions are based on inadequate evidence, but he has not offered an admissible medical opinion to support this assertion. *See* RRSFF ¶¶ 90-91.

4. ANALYSIS

Welch's only claim is that the defendants were deliberately indifferent to his serious medical needs, in violation of the Eighth Amendment. (Docket #1 at 3). Tritt, Grahl, and Strahota (collectively, the "Officer Defendants") assert that Welch's claim must fail because: 1) he failed to exhaust his administrative remedies; and 2) they were not deliberately indifferent. *See* (Docket #68 at 11-19). Jensen's only argument for summary judgment is his lack of deliberate indifference. *Id.* at 5-10. The Court need not decide the exhaustion issue, as no reasonable jury could conclude that any of the defendants exhibited deliberate indifference.

4.1   Deliberate Indifference

To state a claim for a violation of constitutional rights pursuant to 42 U.S.C. § 1983, a plaintiff must prove that: 1) he was deprived of a right secured by the Constitution or laws of the United States; and 2) the deprivation was visited upon him by a person or persons acting under color of state law. *Buchanan-Moore v. County of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009) (citing *Kramer v. Village of North Fond du Lac*, 384 F.3d 856, 861 (7th

Cir. 2004)); *see also Gomez v. Toledo*, 446 U.S. 635, 640 (1980). The defendants do not dispute that they acted on the color of state law.

They do, however, argue that they were not deliberately indifferent to Welch's medical needs, and thus that their conduct did not violate his Eighth Amendment rights. In the recent *Gayton* case, the Seventh Circuit outlined the applicable law:

> [T]he plaintiff must show that: (1) [he] had an objectively serious medical condition; (2) the defendants knew of the condition and were deliberately indifferent to treating [him]; and (3) this indifference caused [him] some injury. An objectively serious medical condition is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention. A medical condition need not be life-threatening to be serious; rather, it could be a condition that would result in further significant injury or unnecessary and wanton infliction of pain if not treated.
>
> With regard to the deliberate indifference prong, the plaintiff must show that the official acted with the requisite culpable state of mind. This inquiry has two components. The official must have subjective knowledge of the risk to the inmate's health, and the official also must disregard that risk. Evidence that the official acted negligently is insufficient to prove deliberate indifference. Rather, "deliberate indifference" is simply a synonym for intentional or reckless conduct, and that "reckless" describes conduct so dangerous that the deliberate nature of the defendant's actions can be inferred. Simply put, an official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. Even if a defendant recognizes the substantial risk, he is free from liability if he responded reasonably to the risk, even if the harm ultimately was not averted. Whether a medical condition is "serious" and whether a defendant was "deliberately indifferent" to it are fact questions, to be resolved by a jury if

>a plaintiff provides enough evidence to survive summary judgment.

*Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010) (citations and quotations omitted). The defendants concede the "serious medical condition" element for purposes of their motion. (Docket #68 at 5-6). The Court will, therefore, focus its attention on the "deliberate indifference" element.

### 4.2 The Officer Defendants

The Officer Defendants had varying levels of participation in the events of July 4, 2014. Strahota was largely uninvolved, other than putting pressure on the wound, while Tritt and Grahl were present during Welch's examination. Welch offers no complaints about their actions prior to seeing Jensen; for example, he does not contend that the Officer Defendants responded too slowly to his bleeding situation or otherwise acted inappropriately while taking him to Jensen. In fact, they appear to have done all they could to stop the bleeding.

Rather, Welch has two primary critiques of their actions during Jensen's assessment. First, he claims that their comments about the inconvenience of transporting him to the hospital swayed Jensen's decision-making. (Docket #74 at 6). However, Welch fails to genuinely dispute Jensen's testimony that those comments did not influence his decision. In fact, Welch concedes that Jensen ultimately told the Officer Defendants that Welch did not need hospitalization. Welch further concedes that the Officer Defendants are not medical professionals and that Jensen was responsible for assessing and treating him. Thus, because "[t]he officers were not responsible for administering medical care to [Welch,]…they were 'entitled to defer to the judgment of jail health professionals so long as [they] did not ignore [the

prisoner].'" *King v. Kramer*, 680 F.3d 1013, 1018 (7th Cir. 2012) (quoting *Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010)).

Welch's second complaint is that the Officer Defendants failed to intervene in Jensen's assessment, either by demanding that he conduct the assessment differently—namely, visiting Welch's cell—or by questioning his decision on hospitalization. (Docket #74 at 6-7). The *King* court provides further relevant instruction:

> The only exception to th[e] rule [that officers may rely on medical professional judgment] is that nonmedical officers may be found deliberately indifferent if "they have a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner." *Hayes v. Snyder*, 546 F.3d 516, 527 (7th Cir. 2008) (citations omitted). King [the inmate] does not present any evidence that Olson and Koby–Gobel [the officers] were aware that Kramer [the nurse] was improperly treating King. They were not trained to assess whether an inmate is genuinely experiencing seizures, and so they lacked the capacity to judge whether Kramer made an inappropriate diagnosis.

*Id.* This is precisely what occurred here. The Officer Defendants did not have the authority to order Welch to be hospitalized. Even assuming they did, the Officer Defendants had no medical expertise by which they could question Jensen's decision not to do so.

Welch finds no fault with the Officer Defendants' conduct prior to Jensen's assessment. Once the assessment began, they were entitled to rely on Jensen's professional judgment and, in fact, could not override it. Thus, no reasonable jury could conclude that the Officer Defendants were deliberately indifferent to Welch's medical needs.

### 4.3 Jensen

As a medical professional, the standard for assessing Jensen's conduct is different than that for the Officer Defendants, though that does not mean the burden on Welch is substantially less onerous. Constitutional deliberate indifference claims are not a substitute for state law medical malpractice actions. *Snipes v. DeTella*, 95 F.3d 586, 590 (7th Cir. 1996). Unlike medical malpractice cases, "mere negligence or even gross negligence" by a prison guard or nurse "does not constitute deliberate indifference." *Id.* "Medical decisions[,] such as whether one course of treatment is preferable to another, are beyond the [Eighth] Amendment's purview." *Id.* at 591. In other words, "deliberate indifference may be inferred based upon a medical professional's erroneous treatment decision *only* when the medical professional's decision is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible did not base the decision on such a judgment." *Estate of Cole by Pardue v. Fromm*, 94 F.3d 254, 261-62 (7th Cir. 1996) (emphasis added). If the inmate cannot meet this standard, "the deliberate indifference question may not go to the jury." *Gayton*, 593 F.3d at 623 (citing *Estate of Cole*, 94 F.3d at 261-62).

Welch has adduced no evidence that Jensen was even negligent, much less criminally reckless as required to establish deliberate indifference. Jensen treated Welch's wound and performed tests to determine whether his blood loss was an emergency situation requiring hospitalization. After his twenty-five minute assessment, Jensen concluded that it was not. Rather than falling below the standard of care, the only admissible medical opinions, those of Manlove and Jensen himself, find that Jensen's actions were appropriate.

Welch makes a number of flawed arguments to undermine this result. First, Welch claims that Jensen failed to fully document Welch's symptoms

during or after their meeting. (Docket #74 at 3). Welch makes no argument that this failure impeded his treatment or otherwise damaged him in any way. Second, Welch believes that Jensen's unprofessional comments during the assessment support a finding of deliberate indifference. (Docket #74 at 4). While the Court does not condone such comments (the Court was not provided with the actual words used), Welch's contention is contrary to the medical opinions in this matter. Jensen stated that his assessment and treatment was based on his professional opinion, and Manlove agreed that his conclusions were within the standard of care.

Third, Welch contends that Jensen improperly disregarded his symptoms and the statements of those present that Welch had lost a lot of blood. (Docket #74 at 3). Welch's argument fails to account for the subjective element of deliberate indifference. While Welch testifies that he had various symptoms of severe blood loss, Jensen did not observe them and found his vital signs to be normal. Thus, Jensen was not subjectively aware of a risk to Welch's health, *Gayton*, 593 F.3d at 620, defeating the first necessary element of the claim.

Fourth, Welch argues that Jensen should have done more to assess his condition, namely by going to his cell and looking at the blood on the floor. *Id.* at 3-4. This, however, is merely a disagreement about Jensen's course of treatment, which cannot form the basis of a deliberate indifference claim. *Snipes,* 95 F.3d at 591; *Bieber v. Wisconsin Dept. Of Corrections*, 62 Fed.Appx. 714, 718 (7th Cir. 2003) (absent a showing that a medical professional *knew* their treatment was inadequate, a difference of opinion on treatment does not demonstrate deliberate indifference). Finally, Welch asserts that Jensen was influenced by the Officer Defendants' "inconvenience" comments, but Jensen states that he was not. As before, Welch cannot show that Jensen was

Page 15 of 17

Case 2:15-cv-00191-JPS   Filed 08/16/16   Page 15 of 17   Document 92

subjectively aware of a risk of harm to him but that disregarded it based on the comments, because Jensen did not believe such a risk existed at all. In sum, Welch has offered no evidence which would allow a reasonable jury to conclude that Jensen's conduct was so far below the standard of care as to represent criminally reckless or intentionally harmful treatment.

5.   CONCLUSION

Welch has failed to provide admissible evidence that the defendants were deliberately indifferent to his medical needs. Rather, the evidence shows that they were attentive to him and gave him appropriate medical treatment. The defendants' motion for summary judgment must, therefore, be granted. Welch's motion for appointment of counsel, filed on April 19, 2016, during the pendency of the summary judgment motion, will be denied as moot.

Accordingly,

IT IS ORDERED that the defendants' motion for summary judgment (Docket #61) be and the same is hereby GRANTED;

IT IS FURTHER ORDERED that the defendants' motion to strike (Docket #80) be and the same is hereby GRANTED;

IT IS FURTHER ORDERED that the plaintiff's motion for appointment of counsel (Docket #78) be and the same is hereby DENIED as moot;

IT IS FURTHER ORDERED that this action be and the same is hereby DISMISSED pursuant to 28 U.S.C. §§ 1915(e)(2)(B) for failure to state a claim;

IT IS FURTHER ORDERED that the Clerk of Court document that this inmate has brought an action that was dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2)(B); and

IT IS FURTHER ORDERED that the Clerk of Court document that this inmate has incurred a "strike" under 28 U.S.C. § 1915(g).

The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 16th day of August, 2016.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge